TOWN OF KENWOOD PARK, Appellant, v. JOHN C. LEONARD, Appellee.

MUNICIPAL CORPORATIONS: Town Plats—Effect—Villages Unincorporated. Effect of platting lands within incorporated cities and towns into lots, streets, etc., and the like platting of lands within unincorporated villages, contrasted and discussed.

MUNICIPAL CORPORATIONS: Town Plats—Plats Antedating Incorporation—Rights Acquired. Whether an incorporated town, by the act of incorporation, acquires the fee to *village* streets embraced within the incorporation, or only an easement therein, *quære.* (See Secs. 638, 917, 1482, 1507, Code, 1897.)

MUNICIPAL CORPORATIONS: Town Plats—Vacation Before Acceptance—Effect. The filing of a town plat is, in case of village lands, a continuing tender to the public of an *easement,* only, in the streets, and, in the case of lands within an incorporated town or city, a like tender to the city or town of the *fee* to the streets. In either case, *there must be an acceptance of the tender before the public acquires any rights thereunder.* Acceptance delayed beyond a reasonable time, with no intervening right attaching in others, arms the then owner of the abutting lands with right to withdraw the tender by a vacation of the plat and to take possession of the vacated street. (Secs. 917–920, Code, 1897.)

MUNICIPAL CORPORATIONS: Town Plats—Vacation—Judgment Confirming—Effect—Res Adjudicata. A judgment of court, all parties interested being before the court, confirming the vacation of a *part* of certain streets of a town plat by the owner of the abutting lands, acting under Section 919, Code, 1897, necessarily embraces a finding of the existence of all the facts entitling the owner to vacate, to wit: (a) That the streets sought to be vacated had not been accepted by the city; (b) that said streets were not needed by the public; and (c) that the vacation abridges no right of any other proprietor in the plat: and such judgment, not having been appealed from or in any wise modified, becomes a finality. (Sec. 920, Code, 1897.)

MUNICIPAL CORPORATIONS: Town Plats—Partial Vacation—
5 Conditions.  The owner of lands within a town plat has an abso-
lute right to vacate a *part* of such plat and the streets embraced
therein (a) if the vacation abridges no right of any other pro-
prietor in the plat, (b) if the vacation closes no traveled highway,
and (c) if the streets sought to be vacated are not needed.  Evi-
dence reviewed, and held to sustain the validity of a vacation.
(Sec. 919, Code, 1897.)

SALINGER, J., dissents.

MUNICIPAL CORPORATIONS: Town Plats — Vacation — Paying
6 Taxes on Vacated Streets—Effect.  The fact that he who assumes
to vacate certain streets thereafter paid taxes on such vacated
lands, while not controlling on the validity of the said vacation,
has bearing on the intention of the one assuming to vacate and
the town thereafter questioning the validity of such attempted
vacation.

MUNICIPAL CORPORATIONS: Town Plats—Vacation—''Need''
7 for Street.  On the question of the ''need'' for a street sought
to be vacated under Sec. 919, Code, 1897, regard must be had to
the future.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

THURSDAY, JUNE 29, 1916.

ACTION to enjoin the defendant from obstructing alleged
public streets.  Defense, that the streets had been vacated, as
provided by Section 919 of the Code of 1897.  Decree for the
defendant in the court below.—*Affirmed.*

*F. L. Anderson,* for appellant.

*Voris & Haas* and *O. N. Elliott,* for appellee.

GAYNOR, J.—I.  This is an action in equity, brought to
quiet title to certain lands alleged to be streets and avenues
in the town of Kenwood Park, and to enjoin and restrain the
defendant from fencing or otherwise obstructing them.  The
pieces of land involved in this suit, which the plaintiff claimed
to be public streets of the town, are: (1) Walnut Street,
known on the plat as Street D, which will be referred to

hereafter as D Street; (2) the west end of Lynn Avenue, now Third Street, hereafter called Third Street, and the west end of Elm Avenue, now called Second Street.

That there may be a better understanding of this controversy and of the relative location of the different tracts involved in this suit, we submit herewith a plat of the town of Kenwood Park, showing the streets, blocks, lots and the particular part concerning which this controversy arises. The dark lines appearing upon the plat include Lot 4, containing 26.40 acres, and Lots 6 and 7 of Block 4, Lots 6 and 7 of Block 5, Lots 6 and 7 of Block 12, and all of D Street, and the west ends of Second and Third Streets as originally platted. D Street runs north and south; Second and Third Streets, east and west.

KENWOOD PARK ADDITION
TO
CEDAR RAPIDS, IOWA.

On the 2d day of May, 1884, one Isham and others were the owners of all the land lying east of the west line of D Street, and on said day caused a survey to be made and the plat thereof to be drawn, and the lots, blocks and streets to be marked as shown on said plat, and designated the same as Kenwood Park Addition. This plat was duly filed for record and recorded on the 5th day of May, 1884.

D Street is on the west line of this platted land. Blocks 4, 5 and 12 lie east of and abut upon D Street. The large

lot to the west, known as Lot 4, was farm property at the time the plat was made, and contained about 23 acres, and was not included in the original plat.

It is conceded that, at the time this action was commenced, defendant was the owner of this Lot 4, and also of Lots 6 and 7 in Block 4, Lots 6 and 7 in Block 5, and Lots 6 and 7 in Block 12, on the east side of D Street and abutting thereon. It appears without dispute that the plaintiff had been the owner of this large Lot 4 for over 30 years; that he acquired his ownership of Lots 6 and 7 in Block 4, and Lot 6 in Block 5, prior to the year 1902, and of Lot 7 in Block 5, and Lots 6 and 7 in Block 12, prior to May, 1904; that, at the time this action was commenced, he was the owner of all lots abutting upon the streets in controversy, so far as those parts are involved in this suit. At the time this land was platted and the plat filed, the land included was simply a government subdivision, and was not within the limits of any municipality.

Section 638 of the Code of 1897 provides that town sites platted and unincorporated shall be known as villages. Section 1507 of the Code provides that all public streets of villages are a part of the public road or highway; and all road supervisors or persons having charge of the same, in the respective districts or villages, shall work the same as provided by law. Section 1482 of the Code provides:

"The board of supervisors has the general supervision of the roads in the county, with power to establish, vacate and change them."

The filing of a plat dedicating a highway in a village unincorporated, does not convey to the village, or to the public, the fee title. By such dedication, the general public acquires only an easement in the highway—a right to use it for public purposes. The fee remains in the original owner, and, when vacated, it reverts to the original owner, the same as in all other public highways outside of incorporated cities and towns.

1. Municipal corporations: town plats: effect: villages unincorporated.

Chapter 13, Title V, of the Code deals with cities and towns, and not with villages, and does not cover town sites platted and unincorporated.

Section 917 of Chapter 13, Title V, of the Code of 1897, in so far as it provides that the recording of plats, such as we are dealing with, is equivalent to a deed in fee simple of such portion of the premises platted as is set apart for streets or other public uses, evidently relates to streets in cities and towns, and not to streets in unincorporated villages.

The plaintiff city was not incorporated at the time this plat was filed, and not until the year 1886. The ground formerly platted as Kenwood Park, and the ground known as Lot 4, west of D Street, was all included 2. MUNICIPAL COR- within the corporate limits of the town of PORATIONS: town plats: plats an- Kenwood at the time ·it was incorporated. tedating incor- poration: rights The effect of this was to transfer jurisdiction acquired. over these streets from the board of supervisors to the city council. As the city was not in existence at the time the plat was filed, and could not, therefore, as such, acquire any immediate interest in the streets dedicated, title to, or control over them, the question arises, What right did the city acquire in these streets upon its incorporation? We may assume that it acquired all the rights which flowed from the dedication at the time the plat was filed. At the time the plat was filed, the owners undoubtedly dedicated to public use, for the purposes of public travel, that portion of the plat set apart for streets. The land included in the plat being unincorporated, the·filing of the plat did not convey fee simple title to the land covered by the streets, even when accepted. The effect of the plat gave the public at large the privilege of passing over and using the land so set apart as a public highway, for public travel. The public acquired a right to an easement in the land so set apart, for the purposes for which it was set apart. When accepted as such, the ownership of the land covered by the easement remained in the

original owner, subject only to the right to an easement. As said in *Burroughs v. City of Cherokee*, 134 Iowa 429:

"The recording of the plat is a tender of the conveyance of portions set apart as streets and alleys for such use, to a municipality, and continues until shown to have been withdrawn."

To an incorporated city or town, the tender is in fee, and, when accepted, vests in the municipality a fee title to the land set apart as streets in the plat. See Section 917 of the Code of 1897. When tendered to an unincorporated village, it is the tender of an easement in the land set apart, and, when accepted by the public, the right to the easement becomes complete.

What right the city acquired in these platted streets upon assuming corporate capacity, whether a fee or an easement, it is not necessary for us to determine at this time. In either case, the tender must be accepted before with-

3. MUNICIPAL COR-
PORATIONS: town
plats: vacation
before accept-
ance: effect.

drawn. As to cities and incorporated towns, the legislature provided that, before the conveyance should become complete upon the filing of the plat, there should be some acceptance on the part of the city of the tendered fee; for it is provided in Section 751 of the Code of 1897:

"No street . . . which shall hereafter be dedicated to public use by the proprietor of the ground in any municipal corporation shall be deemed a public street, . . . unless the dedication shall be accepted and confirmed by an ordinance or resolution specially passed for such purpose."

The legislature therein provided a solemn and certain method by which the intent to accept would be made manifest. As said in *Burroughs v. City of Cherokee*, supra:

"Under our statute, the filing of a plat is made equivalent to a deed in fee simple to the streets and alleys, but, like other deeds, requires acceptance, before it can be effective in conveying the title. . . . That this was so intended by the legislature is settled conclusively by the statute exacting such an accept-

ance on the part of the city, by the enactment of an ordinance, and also by the provisions for a vacation of a plat prior to the sale of any lots.''

As said before, the filing of a plat is a tender of conveyance of title in fee to incorporated cities and towns. It is the tender of an easement in the land set aside for streets, to an unincorporated village. In either case, the tender continues until shown to have been withdrawn, and it is presumed, when the plat has once been solemnly filed, that this tender of right in the property set aside for streets continues until something has been done to indicate to the public that the tender has been definitely and permanently withdrawn. The time intervening between the filing of the plat and acceptance is not always controlling. The city or town has a reasonable time in which to make its election, and what is a reasonable time in any particular case depends upon the facts and circumstances, the location of the streets, the extent of the municipality at the time, and the mediate or immediate need of the public to use the property. The right to withdraw the offer also depends upon facts and circumstances. The owner may preclude himself by the selling of lots or blocks, with reference to the conditions shown upon the plat, or by acceptance by the city and improvements made. If the tender has continued for a reasonable time, and has never been accepted by any act of the city, and the city has never assumed jurisdiction or control over the proffered streets, and no disposition has been made of property, within the platted limits, that will be injuriously affected by the closing of the streets, the city is not in a position to complain of the act of the owner in withdrawing his offer and appropriating it to private use. Even where, under Section 917 of the Code, the filing of the plat is equivalent to a deed in fee simple of the portions set apart for the streets, the title does not pass to nor vest in the city or town, until accepted. We do not mean to say that acceptance cannot be indicated in some other way than that provided for in the statute, but there must be something to

indicate an acceptance on the part of the city of the thing tendered, before it acquires any right to or control over it. See *Brown v. Taber*, 103 Iowa 1; *Chrisman v. Omaha & C. B. Ry. & Bridge Co.*, 125 Iowa 133.

From the holding in the last named case, it appears that there is a clear distinction between a mere paper highway, a paper street, and one that has been opened and used, and the use of which is essential to public convenience and welfare; for it is said:

"A fair interpretation would seem to be that the public rights in the streets which may be divested are those of *acquiring* title by acceptance."

The thought runs through the decision that the right to a street may be vacated when no adverse interest has been acquired, even though a paper dedication has been made; that, where there are no private interests involved, and the municipality has not accepted the tendered street, either by resolution contemplated by the statute, or by taking possession and improving the street, or opening it for public travel, the paper street may be vacated. The court said:

"In Section 919, highways are expressly excluded from the power to vacate. The term 'highway,' as here employed, means a traveled street, as distinguished from a mere space laid out between lots and blocks, which may sometime become such. It cannot be construed to mean a country road, for the plat contemplated in the sections mentioned is that filed within corporate limits, where a road is always a street. This view is confirmed by Section 920, which, in authorizing an action in court for the vacation of a plat, directs that 'if any street as laid out on the plat shall be needed for public use, it shall be excepted from the order of vacation, and shall remain a public highway.' "

Thus it appears that the statute authorizing the vacation of streets, in so far as its inhibitions relate to the act of vacation, has reference to its public use, or the necessity for it for public use. If needed for public use, it is excepted from an

order of vacation. If not needed for public use, it may not be excepted from the order of vacation.

We have this record before us. In 1884, the owners of certain land caused a survey to be made and plat to be prepared and filed, in which the land covered by the plat was subdivided into lots and blocks, and spaces left between the lots and blocks for streets; the land so platted was not within the corporate limits of any municipality,—a mere town site, platted and unincorporated. Subsequently, in the year 1886, the plaintiff town was incorporated, and included within its limits this platted land and other land to the west. The city never, by resolution or ordinance, such as is contemplated in Section 751 of the Code, accepted the street in controversy. There is nothing to show that, prior to the incorporation of the city, this street had ever been used or approved as a public highway; that anyone authorized to act for the county prior to the incorporation assumed any jurisdiction or control over it; ever opened it or improved it for public use. There was nothing to distinguish it from adjacent land, or to indicate its location, except the plat; and, after the town became incorporated, it did nothing to suggest a purpose on its part to accept the dedication, or to appropriate the land dedicated to public use for a public street. There was nothing ever done by the city, after it was incorporated, to indicate a purpose that it intended in the future to open this street for public use, or appropriate it as a street or public highway.

It appears that, in the month of January, 1902, the defendant herein, being the owner then of all the land abutting on D Street, filed in the office of the recorder of deeds of the county, a written instrument vacating Lots 6 and 7 in Block 4, and Lot 6 in Block 5, with all the part of D Street lying west, as well as the portions of Third Street lying immediately south of Lot 7 in Block 4, or lying between Lot 7 in Block 4, and Lot 6 in Block 5. There is no question

*4. MUNICIPAL CORPORATIONS: town plats: vacation: judgment confirming: effect: res adjudicata.*

made as to the sufficiency of the instrument as an instrument of vacation, provided the power to vacate rested in said Leonard. Upon the filing of said deed, the auditor marked the same "vacated," on the recorded plat of Kenwood Park Addition. Thereafter, in the year 1903, the plaintiff city brought an action to set aside said deed of vacation, and asked a cancellation thereof upon the record, and that said plat be restored, the same as if said pretended act of vacation had never occurred. The defendant answered this, and filed a cross-petition, in which he alleged that all the parties interested were in court, and prayed that judgment be entered vacating the lots hereinbefore described, and the portions of the streets and alleys that are included within said description, and for such other relief as was equitable. The cause was tried to the court upon the issues tendered, and, on the 22d day of April, 1904, the court entered a decree finding the equities to be with the defendant, Leonard, and that all steps taken by him to vacate the land in dispute were legal and correct, and said vacation was confirmed and made valid. No appeal was taken from this decree, and it has stood, since that time, unquestioned by either party. It will be noticed that this decree affects only the north half of D Street and the lots immediately adjacent to the north half of D Street and that portion of Third Street lying between Lot 7 in Block 4 and Lot 6 in Block 5.

Code Section 920 provides:

"Whenever the owners of any tract of land which has been platted into town lots, and the plat of which has been recorded, shall desire to vacate the plat or a part thereof, a petition, signed by all the owners of it or the part to be vacated, shall be filed in the office of the clerk. . . . If it shall appear that all the owners of lots in the plat or part thereof to be vacated desire the vacation, and there is no valid objection thereto, a decree shall be entered vacating such portion of the plat, and the streets, alleys and avenues

therein; . . . but if any street as laid out on the plat shall
be needed for public use, it shall be excepted.''

It must be kept in mind that, in this proceeding brought
by the city council to cancel the deed of vacation, all parties
interested in the portion to be vacated were before the court.
Plaintiff was the owner of the lots abutting on D Street. He
was the owner of the lots abutting upon the portion of Third
Street that was vacated. The question of his right to vacate
was fully and fairly before the court for adjudication on this
cross-petition. The cross-petition presented all the questions
that could have been raised or determined in an original pro-
ceeding, brought under Section 920. The court by its decree
determined all questions that could be raised under that sec-
tion. With all parties interested before it, including this
plaintiff, the court found and adjudged a right in the plain-
tiff to vacate. It must, then, necessarily have found that
these streets were not accepted by the city, and were not
needed for public use, and that conditions existed which,
under the statute, authorized the vacation by the owner. It
confirmed the deed of vacation as made. This decree stands
as a finality upon the rights of the parties touching the
matter now in controversy, and is conclusively binding on
both parties to this suit, so far as the north half of D Street
and that portion of Third Street included in the decree and
involved in this suit are concerned.

II.   This leaves for our consideration only the south half
of D Street and the west end of Second Street, included
within the dark lines shown on the plat hereinbefore set out.

On the 9th day of May, 1904, the defendant
5. MUNICIPAL COR-
PORATIONS: town herein filed in the office of the recorder of
plats: partial
vacation: con- deeds the following instrument, which was
ditions.
duly acknowledged and recorded:

''I, J. C. Leonard, being owner of Lot 7, Block 5, and
Lots 6 and 7, Block 12, of Kenwood Park Addition to the
city of Cedar Rapids, Iowa, and also of the west 24 acres of
the northwest quarter of the southeast quarter of Section 10,

Township 83, Range 7, all of said lots and 24 acres being in the northwest quarter of the southeast quarter of said section, township, and range, do hereby vacate, cancel and annul plat of Lot 7, Block 5, and Lots 6 and 7, Block 12, of said Kenwood Park Addition to the city of Cedar Rapids, and all that portion of Second Street between Lot 7, Block 5, and Lot 6, Block 12, and all that portion of D Avenue between Lot 7, Block 5, and Lots 6 and 7, Block 12, Kenwood Park Addition to the city of Cedar Rapids, Iowa, and the said 24 acres above described. That part and plat of said D Avenue and Second Street above described, and said Lot 7, Block 5, and Lots 6 and 7, Block 12, of Kenwood Park Addition to Cedar Rapids, Iowa, is hereby vacated and canceled, and the same now is to be and remain a portion and part of the west 24 acres above described.''

After filing said deed of vacation, the plaintiff moved the fence theretofore existing on the west of D Street, to the east of Lots 6 and 7 in Block 4 and Lots 6 and 7 in Block 5 and Lots 6 and 7 in Block 12, as shown on the plat heretofore set out, and has ever since maintained a fence there, and has occupied and cultivated the land. The land included within the dark lines shown upon the plat contains 26.40 acres, and includes the original Lot 4 and D Street, and all the lots abutting upon D Street to the east.

It is conceded that the defendant listed with the assessor of defendant town, for taxation purposes, for the year 1904 and all subsequent years up to the present time, the land enclosed within the dark lines, consisting of 26.40 acres, and has paid the taxes thereon.

6. MUNICIPAL COR-
PORATIONS: town
plats: vaca-
tion: paying
taxes on va-
cated streets:
effect.

These facts are not controlling, but are circumstances bearing upon the question of the intention of the parties touching the land now in controversy. If the defendant had a right to vacate this land, and if his deed of vacation hereinbefore set out was effectual for that purpose, then all rights of this plaintiff became extinguished upon the filing of the deed of vacation,

and the plaintiff cannot now complain of the use to which
the land is put by the defendant. Code Section 914 provides
for the filing of plats. Code Section 917 provides that, when
a plat has been duly filed, as required by statute, it is equiva-
lent to a deed in fee simple of such portion of the premises
platted as is set apart for streets or other public purposes.
A plat amounts simply to a dedication—a solemn, written
act of dedication. It is the solemn, written evidence of an
intent to dedicate. Code Section 751 provides that no
dedication of land to public use as a street shall be effectual
to make it a street or a public highway, unless it be accepted.
It shall not be deemed a public street until accepted.

Code Section 918 provides:

"Any such plat may be vacated by the proprietor thereof,
at any time before the sale of any lots, by a written instru-
ment declaring the same to be vacated, executed, acknowl-
edged and recorded in the same office with the plat to be
vacated, and the execution and recording of such writing
shall operate to annul the plat so vacated, and to divest all
public rights in the streets . . . described therein. In
cases where any lots have been sold, the plat may be vacated
as in this chapter provided by all the owners of lots joining
in the execution of the writing aforesaid."

This includes streets as well as lots. This statute gives
to the proprietor the absolute right to vacate, to set aside, to
annul a written plat at any time before lots are sold within
the platted district, and, when he does this, the proposed
streets—the paper streets—are vacated also. Where lots have
been sold, however, he must have joined with him the lot
owners to accomplish the same purpose. This statute relates
to the vacation of the entire plat.

Code Section 919 provides for the vacation of a part of
the plat, and says:

"Any part of a plat may be thus vacated [that is, as
indicated in the preceding section], provided it does not
abridge or destroy any right or privilege of any proprietor

in said plat, but nothing contained in this section shall authorize the closing or obstruction of highways."

This clearly means traveled highways, open and used, as distinguished from paper streets appearing only upon the plat. The section further provides:

"When any part of a plat is vacated, the proprietors of the lots may inclose the streets . . . adjoining them in equal proportion, except as provided in the next section."

The exception provided in the next section is in the following words:

"But if any street as laid out on the plat shall be needed for public use, it shall be excepted from the order of vacation and shall remain a public highway."

There are three inhibitions upon the right to vacate involved in this section: (1) That it does not abridge or destroy any right or privilege of any proprietor in the plat; (2) that there should be no enclosing or obstructing of any public highway; (3) that, if the paper street is needed for public use, it shall be excepted from the vacation, and, as platted, shall remain a public street.

The action of the defendant, which is called into question in this suit, and the action which he claims was taken which gives him the rights claimed by him in the suit, all rest upon the provisions of Code Section 919. If the vacation made by him in 1904 is valid under the provisions of this section, then the plaintiff has no cause of action; otherwise, it has.

There can be no question, under this record, that no rights or privileges of any proprietor in the plat are abridged in the least by the vacation. Defendant owned the land on both sides of D Street. All the street lies between the lands owned by him. It extended neither north nor south of the platted ground. It had no connection with any other public street north or south. This D Street was at the extreme west end of the platted ground. It afforded no avenue for travel

7. Municipal Cor-
porations: town
plats: vaca-
tion: "need"
for street.

convenient to anyone occupying any portion of the platted ground. It had never been open or used. It never had been needed for use. For more than 20 years, it was in such a condition that it could not be used. The plat was filed in 1884. The city was incorporated in 1886. The deed of vacation was not filed until 20 years after the plat was filed, and until 18 years after the city was incorporated. No lot owner has made complaint of the vacation. The city did not complain until more than 10 years after the plat had been filed. During all these 10 years, the plaintiff has had this land fenced in and used as a part of his farm land, without complaint on the part of anyone. There is no evidence that this street was needed for public travel at the time the deed of vacation was filed, nor is there any evidence that it has since been needed, or that it is now needed for public travel, or that it will serve any public convenience by continuing it upon the plat, or leaving it open. It is true that the need is not to be judged alone by the time when the act of attempted vacation took place, but the need involves the consideration of the future. After all these years have elapsed, it would take a strong showing of necessity before the court would be justified in finding that it was needed for public use, and, therefore, ought to be within the exception referred to in Section 919. There is no evidence in this record that this D Street or any portion vacated by the deed is now needed as a public highway, or that there is any attempt or desire to open it for public travel. The city has never, and does not now, indicate a purpose to open it for public travel. The only suggestion of need is that the city now desires to put in a sewer system in the town, and contemplates building it upon the line of D Avenue. There is no evidence that it is needed for any other public purpose. There is no evidence that it will ever be needed for use as a public highway. The evidence, in fact, negatives the thought that it is needed, or that it will be so needed. The evidence is that it never has been used as a public highway, and, therefore, the act of the

defendant in enclosing it within the lots abutting upon it does not come within that inhibition of the statute prohibiting the closing or obstruction of public highways. The vacation of the plat did not abridge or destroy any right or privilege of any proprietor in said plat, and no proprietor is contending that it did. It does not come, therefore, within this inhibition of the statute. It was not needed as a public highway at the time the vacation deed was filed. There is no evidence that it has been needed, or that it will be needed as a public highway. Therefore, it does not come within the exception found in Section 920, referred to in Section 919. 30 years have elapsed since the plat was filed, and 10 years since the filing of the deed of vacation. This action was not commenced until June, 1914. We think the deed was effectual in vacating that portion of the plat now in controversy; that, in the vacation, none of the inhibitions of the statute were violated. We think the plaintiff was within his right in filing the deed, and the deed was effectual to oust all the rights that the defendant now seeks to assert. As supporting the conclusion herein reached, see *Sarvis v. Caster,* 116 Iowa 707; *Chrisman v. Brandes,* 137 Iowa 433; *McClenehan v. Town of Jesup,* 144 Iowa 352; *Chrisman v. Omaha & C. B. Ry. & Bridge Co.,* 125 Iowa 133; *Burroughs v. City of Cherokee,* 134 Iowa 429; *Kitzman v. Greenhalgh,* 164 Iowa 166; *Incorporated Town of Cambridge v. Cook,* 97 Iowa 599; *Simplot v. City of Dubuque,* 49 Iowa 630; *Laughlin v. City of Washington,* 63 Iowa 652; *City of Waterloo v. Union Mill Co.,* 72 Iowa 437; *Taraldson v. Incorporated Town of Lime Springs,* 92 Iowa 187. See, also, note to *Phillips v. City of Stamford,* 81 Conn. 408 (22 L. R. A. [N. S.] 1114).

On the whole record, we think the decree of the district court was right, and it is—*Affirmed.*

EVANS, C. J., LADD and PRESTON, JJ., concur.

SALINGER, J., dissents from the holding of the second division of the opinion.